UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MIDDLETON,<br><br>    Plaintiff,<br><br>    v.<br><br>HALLIBURTON ENERGY SERVICES, INC., and DOES 1-100,<br><br>    Defendants. | No. 1:19-cv-01747-ADA-CDB<br><br>ORDER DENYING MOTION TO COMPEL ARBITRATION<br><br>(ECF No. 23) |

This matter is before the Court on Defendant Halliburton Energy Services, Inc.'s motion to compel arbitration and dismiss with prejudice. (ECF No. 23.) For the reasons explained below, the Court denies Defendant's motion.

**BACKGROUND**

**A.    Procedural History**

On December 16, 2019, Plaintiff Robert Middleton filed a Complaint under diversity jurisdiction in this Court against Defendant Halliburton Energy Services, Inc. and Does 1 to 100, inclusive, alleging six causes of action: (1) failure to pay overtime and double time wages (Cal. Lab. Code §§ 510, 1194); (2) failure to pay proper regular rate of pay;[1] (3) failure to timely pay wages due at termination (Cal. Lab. Code §§ 201, 203); (4) failure to comply with itemized

---

[1] Plaintiff cites Section 49.2.4.2 of the Department of Industrial Relations' 2002 Division of Labor Standards of Enforcement Policies and Interpretations Manual. (ECF No. 7 at 4.)

1   employee statement provisions (Cal. Lab. Code § 226); (5) failure to provide rest periods or
2   compensation in lieu thereof (Cal. Lab. Code § 226.7); and (6) Violation of Unfair Competition
3   Law (Cal. Bus. & Prof. Code §§ 17200-08). (ECF No. 1.) Plaintiff filed notice of these alleged
4   violations with the California Labor Workforce Development Agency (LWDA) and the
5   Department of Industrial Relations on December 16, 2019. (ECF No. 7 at 7.) Over 65 days passed
6   from Plaintiff's notice, and Defendant did not cure the violations. (*Id*.) Plaintiff then filed his First
7   Amended Complaint (FAC) on February 21, 2020, removing his former fifth cause of action and
8   adding two new causes of action. (*Id*.) Plaintiff's new, seventh cause of action (Cause No. 7) seeks
9   Private Attorney General (PAGA) penalties under California Labor Code Sections 2699 and
10  2699.3, and Plaintiff's new, eighth cause of action seeks civil penalties and equitable relief for his
11  formerly alleged causes of action pursuant to Section 558. (*Id*.) Plaintiff prays for attorneys fees
12  and equitable relief. (*Id*. at 9.)

13  On March 27, 2020, the parties filed a Joint Stipulation for Arbitration and Stay of the
14  Action (Stipulation). (ECF No. 10.) In the Stipulation, the parties agreed to "dismiss all pending
15  claims except for Cause No. 7—'Private Attorney General Penalties Under California Labor Code
16  Section 2699'" so that the other claims could be arbitrated. (*Id*. at 2.) The Stipulation created "a
17  mutual agreement mandating all claims, but for Cause No. 7, be resolved in arbitration." (*Id*.) The
18  parties stipulated that Plaintiff would "pursue his claims on an individual basis only in arbitration
19  pursuant to the terms of the [Arbitrated Agreement,]" to a "stay of this action pending the outcome
20  of arbitration[,]" and requested "the Court reserve jurisdiction of Cause No. 7." (*Id*.) Finally, the
21  parties stipulated Defendant would not provide a responsive pleading as Plaintiff's FAC was not
22  served pursuant to Federal Rule of Civil Procedure 4. (*Id*.) This Court issued an Order giving
23  effect to the Stipulation on March 31, 2020; staying the action, retaining jurisdiction over Cause
24  No. 7; and directing the parties to notify the Court of the conclusion of arbitration within 30 days
25  following the issuance of the arbitrator's decision. (ECF No. 11 at 2.)

26  The Court issued a Minute Order on February 12, 2021, nearly a year later, directing the
27  parties to inform the Court of the status of the action due to the length of the stay. (ECF No. 12.)
28  The Parties responded with a Joint Status Report, stating the arbitrator set a starting date for January

2

24, 2022, for a week of arbitration. (ECF No. 13.) The parties estimated the action would need to be stayed for only 90 days after arbitration concluded. (*Id*.)

The Court issued a second Minute Order, upon sua sponte review of the record, on August 8, 2022, directing the parties to inform the Court whether a further stay of the action was warranted and the length of any such continuance. (ECF No. 16.) The parties submitted a second Joint status Report stating arbitration had not concluded and three additional hearings were set for August 30, 31, and September 1, 2022. (ECF No. 17.) The parties did not anticipate an arbitration award prior to November 1, 2022. (*Id*.) Defendant substituted representation on August 23, 2022 (ECF No. 18), which the Court approved September 13, 2022 (ECF No. 21).

On November 10, 2022, Defendant filed this Motion to Compel. (ECF No. 23.) Defendant requests the Court split Cause No. 7 in two, compelling Plaintiff's individual PAGA action to arbitration and dismissing, or staying, Plaintiff's representative PAGA action. (*Id*.) Plaintiff opposed November 21, 2022. (ECF No. 26.) Defendant replied December 1, 2022. (ECF No. 27.)

**B.     Factual Background**

Plaintiff's FAC alleges the following: Defendant employed Plaintiff for over four years until December 5, 2019, as a non-exempt directional driller. (ECF No. 7 at 2.) Defendant misclassified him as exempt. (*Id*. at 6.) Defendant paid Plaintiff a normal salary, hourly wages, and daily flat sum encompassing his bonuses and car allowance; however, Defendant failed to calculate Plaintiff's daily bonus, car allowance, overtime, and vacation pay into his regular rate of pay. (*Id*. at 2.) Plaintiff regularly worked overtime and double time. (*Id*. at 3.) Plaintiff was not paid all due wages at his termination on December 5, 2019. (*Id*. at 4.) The paystubs Plaintiff received from Defendant failed to state the pay rate he received or was entitled to receive. (*Id*. at 5.) These practices allowed Defendant to save hundreds of thousands of dollars per year in labor costs and to underbid and undercut its competitors that complied with California law. (*Id*. at 6.) On behalf of similarly aggrieved employees and himself, Plaintiff alleges Defendant committed seven PAGA violations and seeks penalties. (*Id*. at 8.) Thirty to fifty employees would be encompassed in the statutory period and the seven alleged PAGA violations are worth approximately $1,400.00 in penalties per employee per pay period since 2018. (*Id*.)

### C. The Arbitration Agreement

This motion relies on the parties' executed arbitration agreement. (ECF No. 23-4.) The Halliburton Dispute Resolution Plan (Agreement) mandates the parties "finally and conclusively resolve[] through arbitration" all "disputes"[2] as defined. (*Id*. at 9.) The Agreement requires Defendant's employees to relinquish their legal right to bring any form of class action or representative action, stating, "Each Dispute shall be arbitrated on an individual basis.  Neither the Company nor any Employee or Applicant may pursue any Dispute on a class action, collective action or consolidated basis or in a representative capacity on behalf of other persons or entities who are claimed to be similarly situated, or participate as a class member in such a proceeding *unless all Parties to the Dispute consent in writing*."  (*Id*. (emphasis added).)  The Agreement states that it, "does not apply to claims . . . that, as a matter of law, cannot be arbitrated." (*Id*.)

## LEGAL STANDARDS

### A. Motion to Compel Arbitration

The FAA governs arbitration agreements and affords parties the right to obtain an order directing arbitration proceed in the manner provided for in the agreement. 9 U.S.C. §§ 2, 4. The operative provision of the FAA states:  "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."  9 U.S.C. § 2.  The Court has "described this provision as reflecting both a 'liberal federal policy favoring arbitration,' [citation], and the 'fundamental principle that arbitration is a matter of contract,' [citation]. . . The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of

---

[2] The Agreement defines "dispute" as "all legal and equitable claims . . . between persons bound by [it] or by an agreement to resolve Disputes under [it], or between a person bound by [it] and a person or entity otherwise entitled to its benefits . . . ." (ECF No. 23-4 at 6.)

4

1    any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally
2    applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that
3    apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is
4    at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

5    To decide a motion to compel arbitration, the Court must determine: "(1) whether a valid
6    agreement to arbitrate exists [within the contract] and, if it does, (2) whether the agreement
7    encompasses the dispute at issue." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1017 (9th
8    Cir. 2016) (brackets in original)). "Arbitration is a matter of contract, and the FAA requires courts
9    to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).
10   "[C]ourts must place arbitration agreements on an equal footing with other contracts, [citation], and
11   enforce them according to their terms." (*Id*. at 339.)  Parties may use general contract defenses to
12   invalidate an agreement to arbitrate.  *See id*.  The Court should order arbitration of a dispute only
13   where satisfied neither the agreement's formation nor enforceability or applicability to the dispute
14   is in issue. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010). "Where
15   a party contests either or both matters, 'the court' must resolve the disagreement" (*id*.) because
16   "'[[a]] party cannot be required to submit to arbitration any dispute [it] has not agreed
17   [to].' [Citation]." (*Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014) (*Knutson*).

18   **B.      Contracts Law: A Valid Modification to the Agreement via Stipulation.**

19   The Court relies on "basic contract principles to interpret [a] Stipulation.  An agreement to
20   settle a legal dispute is a contract and familiar principles of contract law govern its enforceability.
21   [(Citations.)]  Each party agrees to 'extinguish those legal rights it sought to enforce through
22   litigation in exchange for those rights secured by the contract.' [(Citations)]." *Jeff D. v. Andrus*,
23   899 F.2d 753, 759 (9th Cir. 1989) (*Jeff D*.). "Local (California) law controls the interpretation of
24   [stipulations], even when the underlying cause of action is federal in nature." *Lamanna v. Comm'r*,
25   107 F. App'x 723, 724 (9th Cir. 2004). In California, mutual assent is a required element of contract
26   formation and "'may be manifested by written or spoken words, or by conduct,' [citation], and
27   acceptance of contract terms may be implied through action or inaction, [citation]. Thus, 'an
28   offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held

5

to have accepted, by his conduct, whatever terms the offer contains.' [Citation]. Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement. [Citation]." *Knutson*, 771 F.3d at 565.

"Under California law, if a contract's terms are unambiguous, a court may interpret the contract without recourse to extrinsic evidence" (*In re Crow Winthrop Operating P'ship*, 241 F.3d 1121, 1124 (9th Cir. 2001)) and "'will generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face'" (*United States v. Singui*, 779 F. App'x 484, 486 (9th Cir. 2019) (citing *United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016) and comparing plea agreement to stipulation)). "Like any other contract, we must interpret it so as to carry out the intention of the parties." *United States v. Petty*, 80 F.3d 1384, 1387 (9th Cir. 1996) *see also CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078 (C.D. Cal. 2015) [court applied modified procedures rather than those in effect when employee entered agreement in employer's FAA motion to compel and stay employee's action, where employer modified in accordance with agreement's modification clause]. "As a general rule, 'all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated.' [(Citation.)] However, laws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." *Harris v. Cnty. of Orange*, 17 F.4th 849, 866 (9th Cir. 2021) (quoting *Swenson v. File*, 3 Cal. 3d 389, 393 (1970)); *see also Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991).

## ANALYSIS

**A.    The Parties Formed a Valid Agreement to Arbitrate**

Defendant argues that "Courts routinely recognize that Halliburton's arbitration agreement satisfies *Armendariz. See, e.g.*, *Brashear [v. Halliburton Energy Servs., Inc.]*, 2020 WL 4596116, at *15 [(E.D. Cal. Aug. 11, 2020) (*Brashear*)] (after analyzing the *Armendariz* factors, concluding that 'Plaintiffs and Halliburton entered into valid arbitration agreements') . . . ." (ECF No. 23-1 at

6

1   14.) Plaintiff does not contest whether the Agreement was validly formed.[3]

2   "When deciding whether the parties agreed to arbitrate a certain matter (including

3   arbitrability), courts . . . apply ordinary state-law principles that govern the formation of contracts."

4   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); see *Brashear*, 2020 WL

5   4596116, at *6. State law dictates "the elements for a viable contract are '(1) parties capable of

6   contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.'"

7   *Brashear*, 2020 WL 4596116, at *7.

8   Defendant's offer letter, which Plaintiff executed, evidences consent; it states, "Your

9   acceptance of employment means you also agree to and are bound by the terms of the Halliburton

10  Dispute Resolution Program, effective January 1, 1998. The Halliburton Dispute Resolution

11  Program binds the employee and the Company to handle workplace problems through a series of

12  measures designed to bring timely resolution. This will be true both during your employment and

13  after your employment should you terminate." "Significantly, an individual 'who signs a written

14  agreement generally is bound by its terms, even though he neither reads it nor considers the legal

15  consequences of signing it.'" *Brashear*, 2020 WL 4596116, at *8 (quoting *Operating Engineers*

16  *Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984)). The parties do not contest that the

17  parties were capable of contracting, there was a lawful object to the agreement, nor that there was

18  sufficient consideration. *See id*. (citing *U.S. ex rel. Oliver v. Parsons Co*., 195 F.3d 457, 462 (9th

19  Cir. 1999) ["Under California contract law, a contract may be implied from the conduct of the

20  parties . . . a valid []contract exist[s] because the parties' continued performance under the terms of

21  the written contract [i]s sufficient to prove the continued existence of the contract"]). This Court

22  agrees with the parties. The Agreement is valid, therefore, the parties must be held to the terms of

23  the Agreement to resolve disputes as defined.

24  **B.      The Agreement Does Not Encompass the Dispute at Issue because The Stipulation**

25

26  [3] This dispute does not concern an employee potentially in the transportation industry to which the FAA would not apply under 9 U.S.C. § 1. *Romero v. Watkins & Shepard Trucking, Inc*., 9

27  F.4th 1097, 1101 (9th Cir. 2021) ["In line with that reasoning, *New Prime* [*Inc. v. Oliveira*, 139 S. Ct. 532 (2019) ]directs courts to decide for themselves whether the [§ 1] exemption applies"]; *see*

28  *also id*. ["parties could not 'contract around the FAA's transportation worker exemption'"].

7

**Modifies the Agreement and Exempts Cause No. 7 from Arbitration.**

The issue is whether the Court has the power to compel Plaintiff to arbitrate Cause No. 7. To decide, the Court must determine whether the parties stipulated to litigate Cause No. 7 in this Court, exempting Cause No. 7 from arbitration.

Defendant argues "in light of a recent ruling by the United States Supreme Court in *Viking River Cruises, Inc. v. Moriana*, 142 U.S. 1906 (2022) [(*Viking*)], the binding arbitration agreement executed by Plaintiff obligates him to arbitrate his individual PAGA claim on a bilateral basis with [Defendant]." (ECF No. 23-1 at 7.) Defendant argues "because Plaintiff lacks standing to assert a representative PAGA claim once his individual PAGA claim is compelled to arbitration, *Viking* requires dismissal of the representative PAGA claim." (*Id*.)

Defendant argues a stay would be improper, anticipating Plaintiff would argue that a potential contention between pending litigation before the California Supreme Court and *Viking* would require a stay. (ECF No. 23-1 at 7.) According to Defendant, "the California Supreme Court will determine whether—as a matter of state law standing under PAGA—courts must dismiss a representative PAGA claim after the individual PAGA claim is sent to arbitration." (ECF No. 23-1 at 7; s*ee Adolph v. Uber Technologies, Inc*. (Case No. S274671) [(*Adolph*)]. Defendant argues the pending decision in *Adolph* does not justify a stay as waiting for a decision would unnecessarily extend this litigation. (ECF No. 23-1 at 7.)

Plaintiff did not address this argument.[4]  Plaintiff instead argues Defendant is barred from bringing this motion by its own stipulation. (ECF No. 26 at 1.) Plaintiff argues "Defendant stipulated that the PAGA claim, as pled at the time of the stipulation, would be heard in this court after Plaintiff's individual arbitration." (*Id*.) Defendant characterizes the argument as "sidestep[ping] binding US Supreme Court precedent" in *Viking* and argues "nowhere does the parties' March 2020 stipulation[] say anything about whether the PAGA claim will be decided in this Court or in arbitration, or whether it may be attacked through a motion to dismiss," only that the parties agree to stay the action. (ECF No. 27 at 5.)

---

[4] Because Plaintiff did not address this argument the Court does not address it here.

8

Plaintiff is correct: The Stipulation constitutes a valid modification of the Agreement, requiring the parties to litigate Cause No. 7. The Agreement provides for modification, specifically its provision precluding class and representative actions as it authorizes an Employee to pursue those actions when "all Parties to the Dispute consent in writing." (ECF No. 23-4 at 9.) The parties' intention to modify this provision manifests in the plain language of the Stipulation. The Stipulation "dismiss[ed] all pending claims except for Cause No. 7—'Private Attorney General Penalties Under California Labor Code Section 2699'" (ECF No. 10 at 2) and created "a mutual agreement mandating all claims, but for Cause No. 7, be resolved in arbitration" (*Id.*). The parties stipulated Plaintiff would pursue "his claims on an individual basis only in arbitration pursuant to the terms of the [Arbitrated Agreement,]" while expressly "request[ing] the Court reserve jurisdiction of Cause No. 7." (*Id.*) Furthermore, the conduct of the parties evidences an intention to litigate Cause No. 7: this motion was brought forward only following a substitution in legal counsel by that new counsel, not by counsel constructing the Stipulation in the few months following the release of the *Viking* opinion.

Defendant then argues, in its reply, that because the applicable law has changed, and because there is a new law with a ruling perceived to favor their client, so should the implications of their March 2020 stipulated agreement. (ECF No. 27 at 5.) Plaintiff, in its opposition, argues "Defendant cannot renege more than two and a half years later because of the controversy between *Viking* and *Adolph*." (ECF No. 26 at 1.)

While terse, Plaintiff is correct. *See Harris*, 17 F.4th at 866 ["laws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties"]. Furthermore, the conduct of the parties again belies their intentions motivating the Stipulation. The parties did not include any caveat to capture potential changes in case law in the Stipulation, indicating an intention to be bound by the existing law at the time of the Stipulation concerning the entirety of Cause No. 7. Plaintiff's counsel additionally indicates the parties were well aware of the law in drafting and executing the Stipulation when he states in his declaration, "I entered into this stipulation because it stated, 'Plaintiff and Defendant are parties to a mutual agreement mandating all claims, but for

9

1 Cause No. 7, be resolve[d] in arbitration.'  It was my understanding [the parties agreed] this was a
2 stipulation the Claims in Cause No. 7 . . . on file in this court as of March 27, 2020, . . . were not
3 subject to arbitration." (ECF No. 26 at 10.)

4     The Court finds the Agreement, as modified by the Stipulation, does not encompass Cause
5 No. 7; therefore, this Court does not have the ability to compel Plaintiff to arbitrate that claim.  As
6 a result, this Court does not reach the issue of whether these actions should be stayed or compelled.
7 The contention between *Viking* and *Adolph* does not constrain this Court: the parties stipulated the
8 Court would reserve jurisdiction of Cause No. 7.  The Stipulation manifested consent in writing
9 pursuant to the modification clause of the class action and representative action waiver of the
10 Agreement; therefore, the modification is valid and binding.  Unless Defendant can challenge that
11 validity via motion, present good cause to set aside the Stipulation, or present a subsequent joint
12 stipulation that would have similar effect, the validity of this modification requires the parties and
13 this Court to continue "mandating all claims, but for Cause No. 7, be resolved in arbitration" and
14 to "reserve jurisdiction of Cause No. 7."

15     Thus, the Court DENIES Defendant's motion to compel arbitration.

16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///

23 **CONCLUSION**

24 Accordingly:

25 1.    Defendant's motion to compel arbitration (ECF No. 9) is denied without prejudice;
26     and
27 2.    Plaintiff's action will remain stayed until current arbitration concludes.
28

10

IT IS SO ORDERED.

Dated:     January 20, 2023

_____
UNITED STATES DISTRICT JUDGE

11