1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  ROBERT MIDDLETON, | Case No. 1:19-cv-01747-CDB |
| 12                    Plaintiff, | **ORDER GRANTING AS MODIFIED MOTION FOR APPROVAL OF PAGA SETTLEMENT AND ENTRY OF JUDGMENT** |
| 13            v. | |
| 14  HALLIBURTON ENERGY SERVICES, INC., | (Doc. 39) |
| 15 | |
| 16                    Defendant. | Clerk of the Court to Close Case |

17

18          Pending before the Court is the parties' joint motion for approval of Private Attorneys

19  General Act ("PAGA") Settlement, filed December 6, 2023.  (Doc. 39).  The motion is

20  accompanied by declarations from Plaintiff's attorney, Karl Gerber, and from Jon D. Meer,

21  counsel for Halliburton Energy Services, Inc. ("Halliburton or "Defendant").  (Docs. 40, 41).[1]

22  The Court finds that the terms of the settlement are fundamentally fair, adequate, and reasonable.

23  For the reasons set forth herein, the Court will reduce Plaintiff's requested incentive award.

24  **I.      Background**

25          On December 16, 2019, Robert Middleton ("Plaintiff"), initiated this action with the filing

26  of a complaint against Halliburton for alleged California Labor Code ("Labor Code") violations.

27  _____

28  [1] On January 4, 2024, the parties consented to the jurisdiction of the United States Magistrate Judge and the action was reassigned to Magistrate Judge Christopher D. Baker for all purposes pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 45).

(Doc. 1).  On December 6, 2023, Plaintiff filed a motion for approval of PAGA settlement which is accompanied by a declaration from Attorney Gerber.  (Docs. 39-40).  The settlement is the result of arm's length negotiations between the parties, who were represented by counsel and assisted by a Ninth Circuit mediator. (Doc. 39 p. 1).  The parties also have engaged in individual arbitration on behalf of Plaintiff Middleton and six other Halliburton employees in separate California wage and hour arbitrations.  *Id.*

The parties request the Court to (1) approve the settlement and the gross settlement amount of $100,000 in exchange for a dismissal of the PAGA claim with prejudice; (2) approve an award of one-third of the gross settlement amount ($33,333.33) to Plaintiff's counsel; (3) approve an award of $9,500 in costs to Plaintiff's counsel; (4) appoint ILYM Group, Inc. ("ILYM") as the settlement administrator and approve $4,250 in anticipated settlement administration costs; (5) approve a $5,000 enhancement award to Plaintiff Middleton in exchange for his participation in this action and executing a general release; and (6) approve $47,916.67 (the remainder of the gross settlement amount) as payment of civil penalties under PAGA, $35,937.50 (75% of the PAGA penalties payment) of which will be paid to the California Labor and Workforce Development Agency ("LWDA") for its share of PAGA civil penalties, and $11,979.17 (25% of the PAGA penalties payment) to the aggrieved employees.  *Id.*

**A.    The Proposed Settlement**

Pursuant to the parties' settlement agreement, the underlying PAGA claims to be released include alleged violations of California Labor Code §§ 201-203, 204, 210, 221, 223, 226, 226.7, 510, 512, 516, 551-552, 558, 1174, 1182.12, 1194, 1194.2, 1197, 1198, 2699, 2699.3, 2699.5, and 2802; any applicable California Industrial Welfare Commission Wage Orders; and Cal. Bus. & Prof. Code § 17200 *et seq*., during the relevant period. (Doc. 40-4 "Agreement" ¶5.1).  The Agreement further states that "[t]he release does not cover potential damages available from individual claims under the California Labor Code that are unrelated to a PAGA cause of action."  *Id.* (emphasis omitted).

Under the terms of the Agreement, Defendant will pay a gross settlement amount of $100,000.  (Agreement ¶1.9).  The gross settlement amount includes attorneys' fees, settlement

1    administration costs, an enhancement award for plaintiff, the LWDA PAGA payment, and all

2    individual PAGA payments.  *Id*.  The net settlement amount is the portion of the gross settlement

3    amount remaining for payments to the aggrieved employees and the LWDA, after deductions for

4    settlement administration costs, attorneys' fees, costs, and any enhancement award to Plaintiff.

5    (*Id*. ¶1.14). Following those deductions, the Net Settlement Amount is valued at $47,916.67.

6         As required by the PAGA statute, 75 percent of the Net Settlement Award or ($35,937.50)

7    shall be paid to the LWDA, and the remaining 25 percent ($11,979.17) will be paid to the

8    aggrieved employees on a pro-rata basis based on the number of pay periods each employee

9    worked during the relevant period which lasts from December 16, 2018, to the date of the entry of

10   this order.  (*Id*. ¶1.16).

11   **II.    Legal Standard**

12        The Private Attorneys General Act, Cal. Lab. Code §§ 2699 *et seq.*, was enacted after the

13   California Legislature declared that: (i) adequate financing of labor law enforcement was

14   necessary to achieve maximum compliance; (ii) staffing levels for state labor law enforcement

15   agencies declined and were unable to keep up with a growing labor market; (iii) vigorous

16   assessment and collection of civil penalties provides a meaningful deterrent to unlawful conduct;

17   and (iv) it is in the public interest to allow aggrieved employees, acting as private attorneys

18   general, to seek and recover civil penalties for Labor code violations. *Chamberlain v. Baker*

19   *Hughes, a GE Company, LLC*, No. 1:19-cv-00831-DAD-JLT, 2020 WL 4350207, at *3 (E.D.

20   Cal. July 29, 2020) (citations omitted).

21        PAGA allows an aggrieved employee to bring an action for civil penalties for labor code

22   violations on behalf of themselves and other current or former employees. Cal Lab. Code §

23   2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

24   enforcement agencies." *Arias v. Superior Court*, 46 Cal.4th 969, 986 (2009). A judgment in a

25   PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by

26   a judgment in an action brought by the government." *Id.*

27        PAGA imposes certain limits on litigants. First, because a PAGA action is a "substitute"

28   for an action brought by the state government, a plaintiff suing under PAGA is limited to civil

penalties only, rather than damages available privately through direct or class action claims. *Id.* Second, under PAGA, the aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Third, any civil penalties recovered must be distributed as follows: 75 percent to the LWDA, and the remaining 25 percent to the aggrieved employees. *Id.* § 2699(i).

Finally, any settlement of PAGA claims must be reviewed and approved by a trial court. *Id.* §2699(l)(2). The legal authority identifying the proper standard of review of PAGA settlements to by employed by the court is still nascent. *Moniz v. Adecco USA, Inc.*, 72 Cal. App.5th 56, 75 (2021) ("PAGA itself does not provide a standard for this review and approval"). In the Ninth Circuit, courts have approved of PAGA settlements when (1) they meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals. *See Chamberlain*, 2020 WL 4350207, at *4 (cited favorably by *Moniz*, 72 Cal. App.5th at 75-76).

**III.   Discussion**

**A.   PAGA Statutory Requirements**

The Agreement complies with the statutory requirements of PAGA, which provides that "75 percent of the civil penalties recovered by aggrieved employees must be allocated to the LWDA and 25 percent allocated to aggrieved employees." Cal. Lab. Code § 2699(i).  The parties have agreed that $35,937.50, or 75 percent of the PAGA penalties payment be allocated to the LWDA, and $11,979.17 or 25 percent of the PAGA penalties payment be allocated to the aggrieved employees.

PAGA further requires that the plaintiff provide written notice of the allegations to the LWDA and that the "proposed settlement shall be submitted to the agency at the same time that it is submitted to the court."  Cal. Lab. Code §§ 2699(l)(2); 2699.3(a)(1).  On or about November 1, 2023, Plaintiff gave the LWDA notice of the settlement and as of more than 30 days later (December 6, 2023), the LWDA had not objected. (Doc. 40 ¶ 29; Doc. 40-8).

**B.   Whether the Settlement is Fundamentally Fair, Reasonable, and Adequate**

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an

4

abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted); *see*

*Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (a proposed settlement

may be fair, adequate, and reasonable even though greater recovery might be available to the

class members at trial).  In assessing whether a settlement is fair, reasonable, and adequate, "[t]he

court may consider factors such as the merits of the action, the maximum recovery the plaintiff

could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the

settlement amount.'" *Hollis v. Weatherford US LP*, No. 1:16-cv-00252-JLT, 2017 WL 131994, at

*2 (E.D. Cal. Jan. 12, 2017) (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-

5243 SBA, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012)).  Courts also have considered

other factors common to class settlements, such as: (1) the anticipated difficulties of litigating the

case; (2) the risks associated with the costs of continued litigation; (3) counsel's experience in

pursuing similar settlements; and (4) lack of objection from the LWDA.  *Aronson v. Gannet Co.,*

*Inc.*, No. 19-996 PSG (JEMx), 2023 WL 2025706, at *4 (C.D. Cal. Feb. 15, 2023) (citing

*Campbell v. FMC Technologies Surface Integrated SVCS*, No. 1:20-cv-00901-CDB, 2022 WL

17555517, at *3 (E.D. Cal. Dec. 9, 2022)).

### 1.  The Settlement Agreement

According to the Agreement, Plaintiff's PAGA claim is based on the following alleged

California Labor Code Violations: (1) aggrieved employees were not paid minimum wage for all

work performed; (2) aggrieved employees were not paid overtime and double time; (3) Defendant

violated  Cal. Lab. Code § 223 when it purported to maintain a wage scale, but secretly paid the

aggrieved employees a lower wage; (4) aggrieved employees suffered meal and rest break

violations; (5)  aggrieved employees' regular rates of pay were not calculated correctly; (6) the

aggrieved employees were not reimbursed for business expenses, which includes expenses related

to use of personal vehicles and cell phones for work; (7) the aggrieved employees worked seven

consecutive days in a workweek in violation of Cal. Lab. Code §§551-552; (8) aggrieved

employees whose employment ended allegedly were not timely paid all final wages; (9)

Defendant did not pay reporting time pay when the aggrieved employees had to report back to

work for a second time in a single work day or were furnished with less than half of their usual

scheduled day's work; (10) Defendant collected part of the wages it already paid to the aggrieved employees; (11) aggrieved employees did not receive accurate and itemized wage statements from Defendant; (12) Defendant failed to maintain employee records; and (13) Defendant allegedly failed to pay all wages due each month.  (Doc. 39 pp. 3-4).

### 2.  Reimbursement Issues

Attorney Gerber opines that there was a 60 percent chance of obtaining a PAGA penalty for violations of Cal. Lab. Code § 2802 (indemnification for employee's expenses and losses in discharging duties).  (Doc. 40 ¶11).  However, according to Attorney Gerber, Defendant would have argued that some of the requested cellphone reimbursements were unnecessary and that there was a reimbursement policy for some of the 17,356 pay periods at issue. Attorney Gerber assessed the settlement value for the reimbursement period to be $25,000.  *Id*.  In connection with his assessment, Attorney Gerber also considered whether there were other reimbursement items but concluded that no other potential reimbursables were "particularly worthy." *Id*.

### 3.  Unpaid Wages

For the theories pertaining to unpaid wages, Attorney Gerber attests to uncertainty that a jury would find "across the board" liability for aggrieved employees. *Id*. ¶12.  He expressed doubts about employees' ability to convincingly testify at trial given that many have relocated. He also identified apparent legal issues he believes would be ripe for presentment to the Court of Appeals were a jury to find in Plaintiff's favor, including the possible exempt status of some directional driller employees and the viability of a favorable ruling on issues relating to flat rate bonuses.  *Id*.  For these reasons, Attorney Gerber assigned a settlement value to these claims at $50,000.

### 4.  Paystub Violations

Attorney Gerber attests that PAGA penalties for paystub violations would require a finding of unpaid wages.  *Id*. ¶13.  Attorney Gerber valued settlement of the PAGA penalties based on errant paystubs under Cal. Lab. Code § 226 to be fair since he did not believe that every pay period in the suit would result in a penalty. He further assessed that due to the nature of the aggrieved employees' work, there are times worked for short shifts or few days, which he

6

believes would lower the probability of off-the-clock work or missed meal and rest breaks, with certain short shifts having as few as one rest break and no meal breaks due. *Id*. For these reasons, Attorney Gerber assigned a settlement value to these claims at $25,000.

**5. Penalties Below the Maximum Allowed**

Attorney Gerber also attests that under Labor Code section 2699(e)(2), the Court may enter penalties for less than the maximum amount allowed. *Id*. ¶14.  This presents an uncertainty as to the maximum recoverable amount since Plaintiff expects a vigorous defense and based on Attorney Gerber's experience, judges might feel differently about the payment of PAGA penalties.  *Id*.

**6. Plaintiff's Overall Valuation**

In terms of overall valuation, Attorney Gerber attests to having doubt whether a judge would award over one million dollars in PAGA penalties in this case. Instead, he believes that a $250,000 verdict would have been a great outcome after trial.  *Id*. ¶18.  Thus, Attorney Gerber believes that the $100,000 settlement is a better outcome given the risk of losing the trial completely or losing on some of the issues. *Id*. Attorney Gerber further attests that he would likely spend $100,000 in costs should this case go to trial and that he believes Defendant would likely appeal any loss to the United States Supreme Court since this case involves various novel and important issues worthy of a high appeal.  *Id*.

Attorney Gerber's declaration demonstrates that he is experienced with litigating PAGA claims and has a suitably informed sense of viable settlement amounts.  His declaration cites to various PAGA non-class settlements, including settlements approved by this court. *See e.g.*, *Campbell*, 2022 WL 17555517; *Chamberlain v. Baker Hughes, a GE Company, LLC*, No. 1:19-cv-00831-DAD-JLT (E.D. Cal. July 29, 2020).

*        *        *        *        *

Attorney Gerber attests that the maximum PAGA penalties to which Defendant would have been exposed absent a settlement is a total of $10,413,600. (Doc. 40 ¶9). On the other hand, Attorney Gerber anticipates that Defendant would argue that damages should be comprised of $100 multiplied by 342 (the number of employees in the PAGA group) for a maximum exposure

of $34,200. *Id.*

In light of the issues presented by Plaintiff and summarized above, the Court finds that the parties' settlement terms are fair, reasonable, and adequate in light of the PAGA's policy goals. *See Chamberlain*, 2020 WL 4350207, at *5 (citing *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1132–33) (N.D. Cal. 2016) (defining PAGA's goals as including "benefit[ting] *the public* by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance") (emphasis added).  The record indicates that Plaintiff and counsel litigated this matter by filing the original and two amended complaints in this Court.  (Docs. 1, 7, 36).  Thereafter, the parties attest that they engaged in extensive discovery and investigation of the claims, both in connection with Plaintiff's individual arbitration and arbitration of other aggrieved employees.  (Doc. 39 pp. 14-15) (citing Docs. 40, 41).

The parties thereafter worked with an experienced Ninth Circuit mediator to reach a settlement, which involved multiple collective and single-side conferences with the mediator.  *Id.* p. 15.  *See Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).  This suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.  *See Kutzman v. Derrel's Mini Storage, Inc.*, No. 1:18-cv-00755-AWI-JLT, 2020 WL 5909151, at *9 (E.D. Cal. Oct. 6, 2020).

The PAGA settlement also accounts for the risks of further litigation.  Among other risks, Defendant would be expected to contest that all possible PAGA penalties apply for every pay period and every employee based on the employees' ability to take lawful breaks.  (Doc. 39 p. 15).  Moreover, layoffs and voluntary relocations for work outside of California present challenges to establishing PAGA violations.  *Id.*  Counsel for Plaintiff acknowledges circumstances that further complicate aggrieved employees' ability to establish liability due to their manually recording time on paper sheets, alleged inflation of hours worked, and that employees initialed their timesheets to state that they took meal and rest breaks and were paid for

1    all time worked.  *Id*. pp. 15-16; *see Munoz v. Giumarra Vineyards Corp.*, No. 1:09-cv-00703-

2    AWI-JLT, 2017 WL 2665075, at *9 (E.D. Cal. Jun. 21, 2017) (noting that "[a]pproval of

3    settlement is 'preferable to lengthy and expensive litigation with uncertain results.'"), *F&R*

4    *adopted*, 2017 WL 7371175 (E.D. Cal. Nov. 27, 2017).

5         The total settlement sum of $100,000 is reasonable, given the above-mentioned risks

6    involved and given that the record shows the parties express greatly divergent views regarding the

7    likely maximum PAGA penalty exposure.  (Doc. 40 ¶9); *see Officers for Justice*, 688 F.2d at 628

8    ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render

9    the settlement inadequate or unfair.").  On the one hand, using a low estimate of the possible

10   PAGA penalty amount ($100) and assuming at least one violation per pay period, the PAGA

11   exposure would be $1,735,600.  (Doc. 39 p. 15; Doc. 40 ¶11).  The total settlement sum proposed

12   by the parties represents only six percent (6%) of that estimate.  *Cf. Dunleavy v. Nadler (In re*

13   *Mego Fi. Corp. Sec. Litig.)*, 212 F.3d 454, 458-59 (9th Cir. 2000) (affirming a 16.67 % settlement

14   approval for a weak and risky case), *with Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013

15   WL 1789602, at *5 (N.D. Cal. April 26, 2013) (the 24% settlement approval was reasonable in

16   light of the uncertainties involved in the litigation).

17        On the other hand, based on the liability challenges summarized above, counsel for

18   Plaintiff attests that a more likely and reasonable expectation of a post-trial verdict would be

19   $250,000.  (Doc. 40 ¶18).  In the light of that estimate, the settlement sum of $100,000 falls more

20   comfortably within the range of settlement values deemed reasonable by the courts noted above.

21   Moreover, in assessing reasonableness of the settlement, the Court acknowledges that the

22   settlement agreement does not release any aggrieved employee's non-PAGA claims for alleged

23   violations of the Labor Code.  (Agreement" ¶5.1)).

24        Given the amounts allocated to the LWDA and the Aggrieved Employees, the litigation

25   and negotiation involved in achieving the settlement, the potential risks of further litigation, and

26   the fact that Aggrieved Employees are not precluded from bringing actions against Defendant for

27   individual claims, the Court concludes that the parties' PAGA settlement is fundamentally fair,

28   reasonable, and adequate in view of PAGA's public policy goals

1    With this understanding, the Court will approve the Agreement as it pertains to the award

2   of PAGA penalties.  Counsel has adequately described his experience with pursuing settlements,

3   the difficulties related to the nature of this case, and the risks associated with increased costs of

4   litigation.  Attorney Gerber's declaration elaborates on the risk analysis he undertook concerning

5   the possibilities of failing to prevail at trial or receiving a reduced award.  Counsel's

6   consideration of all these factors as well as the examples of settlement amounts that he secured in

7   similar cases reflect the fairness and reasonableness of the Agreement.

8   **C.    Attorney's Fees**

9    The relevant PAGA provision pertaining to attorney's fees states: "Any employee who

10  prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal.

11  Lab. Code § 2699(g). Calculating fees under this provision requires application of the lodestar

12  method. *Chamberlain*, 2020 WL 4350207, at *5; *see PLCM Grp. v. Drexler*, 22 Cal. 4th 1084,

13  1095 (2000) (noting that the fee inquiry in California begins with the "lodestar"). "In determining

14  reasonable hours, counsel bears the burden of submitting detailed time records justifying the

15  hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

16  (9th Cir. 1986). "Where the documentation of hours is inadequate, the district court may reduce

17  the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Likewise, the court

18  should exclude from the lodestar fee calculation any hours that are not "reasonably expended,"

19  like excessive, redundant, or otherwise unnecessary hours.  *Id.* at 434.   The lodestar figure is

20  calculated by multiplying the number of hours counsel reasonably expended on the litigation by a

21  "reasonable hourly rate for the region and experience of the lawyer." *In re Bluetooth Headset*

22  *Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The lodestar figure may be adjusted

23  upward or downward by an appropriate positive or negative multiplier based on "reasonableness"

24  factors, such as the benefits obtained by counsel and the complexity and novelty of the issues

25  presented.  *Id.* at 941-42.

26   In considering fee applications, the reasonable hourly rates are calculated according to

27  prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895

28  (1984). The fee applicant bears the burden of producing satisfactory evidence "that the requested

1    rates are in line with those prevailing in the community for similar services by lawyers of

2    reasonably comparable skill, experience and reputation." *Id.* at 896 n.11; *McCown v. City of*

3    *Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (party seeking attorney's fees bears the burden of

4    producing documentary evidence demonstrating the number of hours spend on and rates on the

5    litigation). "Affidavits of the plaintiffs' attorney and other attorneys regarding the prevailing fees

6    in the community, and rate determinations in other cases, particularly setting a rate for the

7    plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*

8    *of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

9            Here, the Agreement provides for Plaintiff's counsel to request attorneys' fees not to

10   exceed 33.33 percent of the gross settlement amount, or no more than $33,333.33. (Agreement

11   ¶1.4). Attorney Gerber submitted in support of the Agreement billing summary from his firm,

12   which totaled 694.7 hours of total attorney time, at $600 per hour. (Doc. 40-5 p. 7).

13           In the Ninth Circuit, the benchmark for attorney's fees awards is 25 percent. *Alcazar v.*

14   *OEI Holdings, LLC*, No. 2:19-cv-01209-KJM-AC, 2024 WL 472297, at *3 (E.D. Cal. Jan. 8,

15   2024) (citing *In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018)). The Court must

16   specify its reasons for approving an attorney's fees award that exceed the 25 percent benchmark.

17   *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

18           Attorney Gerber attests that his rate for PAGA actions is $750 per hour and that he has

19   received a rate as high as $1,000 per hour in PAGA class actions. (Doc. 40 p. 19). The proposed

20   $33,333.33 attorney fee award, which represents 33.33 percent of the gross settlement payment,

21   amounts to a rate of approximately $48 per hour – significantly below the lodestar – based on

22   Attorney Gerber's declaration that he expended close to 700 hours litigating this action over the

23   course of approximately four years. This reduced hourly rate is less than hourly rates deemed

24   reasonable in other PAGA cases. *E.g.*, *Chamberlain*, 2020 WL 4350207, at *8 (approving a fee

25   award consistent with an hourly rate of $90.90 for Attorney Gerber); *Campbell*, 2022 WL

26   17555517, at *4 (approving $25,000 fee award equivalent to a rate of $123.95 per hour). This

27   effective hourly rate also is substantially below prevailing rates within the Eastern District of

28   California. *See e.g., Englert v. City of Merced*, No. 1:18-cv-01239-NONE-SAB, 2020 WL

2215749, at *13 (E.D. Cal. May 7, 2020) (finding a rate of $450.00 per hour for a partner with nineteen years of experience, $400.00 per hour for a senior associate attorney with an indeterminate amount of years of experience, and $325.00 for an associate with eight years of experience to be reasonable); *Garcia v. FCA U.S. LLC*, No. 1:16-cv-00730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per hour for attorney with thirty years of experience to be appropriate).

The Court has reviewed Attorney Gerber's seven-page summary of attorney and paralegal hours expended in the litigation of this action (Doc. 40-5). Although the preferred practice is for an attorney to support his fee request with contemporaneous billing records (*Chamberlain*, 2020 WL 4350207, at *8), the exhibit submitted in support of the requested award is sufficient to permit this Court to conclude that the fee request is reasonable, particularly given the reduced effective hourly rate it represents.

**D.    Costs**

"There is no doubt that an attorney who has created a common fund for the benefit of [a] class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citations omitted).

Attorney Gerber proffers an itemized list of costs incurred in the case in support of his requested cost award. (Doc. 40-6). Although Attorney Gerber errantly attests that the proffered exhibits "shows $??? in costs as of ?, 2023" (*id.* ¶26), the referenced exhibit of itemized costs totals $10,699.85, which are comprised of, among other things, the arbitration filing fee, service fees, mailing of PAGA charges, copies, copies of the motion for summary judgment and various other filing fees, depositions, exhibit copies for arbitrator, the retention of a private investigator, and toll calls. *Id.* The agreement provides for recovery of costs only up to $9,500. (Agreement ¶6.3).

While the itemized exhibit largely supports the requested cost award, the summary is not supported by annexed invoices and, without such, the descriptive summaries leave open the possibility or even likelihood that there are some duplicative costs. For example, the statement lists a cost of $1,550.05 for "copies" but also lists various other fees for copies, including: (1) $67

12

1   for certified copies of "Defendant's RME K LIC."; (2) $200.75 for "copies for sj motion"; (3)

2   $250 for "copies of cases arb. wanted"; (4) $50 for "copies of closing argument"; (5) $134.30 for

3   "copies of transcript"; and (6) $31.83 for "mailing copies of cases to arb." However, given the

4   relatively minimal possible overlap of these costs, the fact that the total costs exceed the $9,500

5   maximum provided for in the Agreement by more than $1,000, and that the costs otherwise

6   appear reasonably, the Court will grant Plaintiff's request for reimbursement of costs in the

7   amount of $9,500.

8       Attorney Gerber also submits a statement from ILYN Settlement Administration Experts

9   involving administrative tasks costing about $4,250.00. (Doc. 40-7). Upon review of the figures

10  set forth in the Declaration, the Court approves $4,250 for 350 aggrieved employees in claim

11  administrator costs as reasonable. *See Campbell*, 2022 WL 17555517, at *3 (finding settlement

12  administration costs of $1,514.23 reasonable to manage disbursement to 15 individuals); *Granillo*

13  *v. Weatherford U.S., L.P.*, No. 1:20-cv-01614-CDB, 2023 WL 5985321, at * (E.D. Cal. Sept. 14,

14  2023) (finding $3,000 in administrator costs reasonable for disbursement on action brought on

15  behalf of 191 individuals).

16  **E.      Enhancement Award**

17      The parties request the Court to grant Plaintiff a $5,000 enhancement award for his

18  involvement in the action and in exchange for providing a general release. A representative may

19  "receive a share of class recovery above and beyond [his] individual claim" with a service

20  payment, or enhancement award. *China Agritech, Inc. v. Resh*, 584 U.S. 732, 747 n.7 (2018).

21  However, the decision to approve such an award is a matter within the court's discretion. *In re*

22  *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). The Ninth Circuit has

23  emphasized that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe*

24  *v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013). In evaluating a request for an

25  incentive payment to a representative, the Court must consider "'the actions the plaintiff has taken

26  to protect the interests of the class, the degree to which the class has benefitted from those

27  actions, the amount of time and effort the plaintiff expended in pursuing the litigation,' and any

28  financial or reputational risks the plaintiff faced." *In re Apple Inc. Device Performance Litig.*, 50

1    F.4th 769, 786 (9th Cir. 2022) (quoting *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035,1057 (9th Cir.

2    2019)).

3            Plaintiff Middleton has not submitted a declaration explaining his participation in this

4    case, nor does Attorney Gerber's own declaration address the factors outlined above. Instead,

5    Attorney Gerber declares generally that Plaintiff Middleton has been very active in this lawsuit,

6    including that he provided testimony on several occasions and was present during witness

7    depositions. (Doc. 40 ⁋30).  Plaintiff Middleton also assisted counsel by helping him acquire

8    documents and identifying witnesses even though he relocated to Oklahoma and suffered from a

9    serious back injury.

10           An unsworn assertion in Plaintiff's briefing provides that Attorney Gerber's billing

11   records "recount more than 100 hours of [Plaintiff] Middleton's involvement in this case." (Doc.

12   39 p. 18).  While Plaintiff Middleton in fact may have undertaken activities in connection with

13   the case that amount to more than 100 hours, Attorney Gerber's billing records are not nearly

14   detailed enough to support that claim and the Court is unwilling to rely on a single, unsworn

15   assertion that Plaintiff expended more than 100 hours in litigating the case.  Based on its review

16   of the summary billing exhibit proffered (Doc. 40-6), Plaintiff spent approximately 15 hours with

17   Attorney Gerber in connection with deposition preparation and approximately 3.5 hours

18   communicating with Attorney Gerber via email and telephone.  Even if Plaintiff's deposition

19   lasted eight hours and even if Plaintiff was present for some of the other depositions noted in the

20   billing summary, no records permit the Court to conclude that Plaintiff spent more than 50 hours

21   litigating the case.

22           In determining whether and the extent to which an incentive award is appropriate, courts

23   also will consider the "proportion of the [representative] payment[s] relative to the settlement

24   amount, and the size of each payment." *Smothers v. NorthStar Alarm Services*, LLC, No. 2:17-cv-

25   00548-KJM-KJN, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (quoting *In re Online*

26   *DVD-Rental Antitrust Litig.*, 779 F.3d 934,947 (9th Cir. 2015)).  Here, the requested incentive

27   payment constitutes five percent of the gross settlement amount and is over 146 times higher than

28   the amount an individual aggrieved employer is expected to receive ($34).  Based on its review of

other cases and coupled with its concerns articulated above that Plaintiff has not submitted his own declaration to support the requested award and that Attorney Gerber's billing records provide only a cursory snapshot of Plaintiff's involvement, the Court finds a $5,000 incentive award disproportionately high and will reduce the award to $3,500. *See, e.g., Aguilar v. Wawona Frozen Foods*, No. 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving $7,500 incentive payment to each of two plaintiffs where gross settlement amount was $4.5 million); *Roe v. Frito-Lay, Inc*., No. 14-cv-00751-HSG, 2017 WL 1315646, at *7-8 (N.D. Cal. Apr. 7, 2017) (reducing $10,000 requested incentive award to $5,000 where gross settlement amount was $950,000); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (approving $5,000 incentive payment to each of three plaintiffs where settlement fund was $2.9 million); *Clayton v. Knight Transp*., No. 1:11-cv-00735-SAB, 2014 WL 1154098, at *2, 6 (E.D. Cal. Mar. 21, 2014) (awarding $3,500 incentive payment where average recovery was approximately $150).

**IV.    Conclusion and Order**

For the reasons stated above, IT IS HEREBY ORDERED:

1.  Plaintiff's unopposed motion for approval of the PAGA settlement agreement (Doc. No. 39) is granted <u>as modified</u> and detailed herein.

2.  The Court approves a Gross Settlement Amount of $100,000.

3.  The Settlement Group encompassed by this Order is all hourly, non-exempt employees of Defendant in California, aside from such employees who worked exclusively in an office during their employment with Defendant at any time between December 16, 2018, and the date of entry of an order by the Court approving the Settlement (the "PAGA Period"). By operation of this Approval Order and the Judgment, Plaintiff – on behalf of himself, every member of the Settlement Group (including each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees, spouses, or guardians), and the LWDA – will fully release Halliburton and each of the Released Parties during the PAGA Period of any claims, rights, demands, charges, complaints, causes of action, penalties, interest, attorneys' fees, costs, obligations, or liability of any and every kind under the California Private Attorneys General Act

of 2004 ("PAGA") that were or could have been brought based on the facts asserted in any version of the Complaints filed in the Action (including the Second Amended Complaint filed in September 2023, and the Complaint filed in Plaintiff's individual arbitration) or in the PAGA notice letters Plaintiff sent to the LWDA. This release by Plaintiff, the LWDA, and the Aggrieved Employees includes, but is not limited to, claims based on alleged violations of California Labor Code §§ 201-203, 204, 210, 221, 223, 226, 226.7, 510, 512, 516, 551-552, 558, 1174, 1182.12, 1194, 1194.2, 1197, 1198, 2699, 2699.3, 2699.5, and 2802; any applicable California Industrial Welfare Commission Wage Order; and Cal. Bus. & Prof. Code § 17200 et seq., which may have arisen during the PAGA Period. **The release does not cover potential damages available from individual claims under the California Labor Code that are unrelated to a PAGA cause of action.** The specific California Labor Code provisions that could potentially create liability under PAGA and that are being released include California Labor Code Sections 204, 210, 215, 216, 221, 223 226.3, 226.4, 226.6, 516, 551-552, 558, 1174, 1182.12, 1198, and 2802, to the extent there is PAGA liability apart from individual rights under the statute, and Wage Order 16 to the extent the Wage Order provides remedies available through PAGA.

4.  The Court appoints ILYM Group, Inc. ("ILYM") as the Settlement Administrator.

5.  The Court approves an award of up to $4,250 (of the Gross Settlement Amount) in anticipated Settlement Administration Costs to ILYM.

6.  The Court awards Plaintiff's Counsel's Attorneys' Fees of $33,333.33 (1/3 of the Gross Settlement Amount) and Costs of $9,500.

7.  The Court approves an Individual Settlement Sum to Plaintiff of $3,500 from the Gross Settlement Amount as a service enhancement award.

8.  The Court approves the remainder of the Gross Settlement Amount as payment of civil penalties under PAGA, to be allocated as follows: 75% of the PAGA penalties payment to the California Labor and Workforce Development Agency ("LWDA") for its share of PAGA civil penalties, and 25% of the PAGA penalties payment to the Settlement Group. The amount allocated as PAGA penalties for the Settlement Group is called the Total PAGA Payment To All Aggrieved Employees.

9.  The Total PAGA Payment To All Aggrieved Employees will be divided and distributed as follows: each member of the Settlement Group shall be assigned a percentage share of the amount allocated to the Total PAGA Payment To All Aggrieved Employees. The percentage share shall be based upon the total number of Pay Periods the specific member of the Settlement Group was employed during the PAGA Period in comparison to the total number of Pay Periods all members of the Settlement Group were employed during the PAGA Period.

10.  The Total PAGA Payment To All Aggrieved Employees will be distributed to all members of the Settlement Group and there will be no reversion of unclaimed funds to Defendant.

11.   Defendant shall provide ILYM with contact information for and the number of Pay Periods worked by each member of the Settlement Group within 30 calendar days after the Court issues final approval of the Settlement (the "Effective Date"). The Gross Settlement Amount shall be funded to ILYM within 60 days of the Effective Date. Within 30 days of the funding of the Gross Settlement Amount, ILYM shall make all settlement payments to each member of the Settlement Group, the LWDA, and Plaintiff's Counsel.

12.  The Court enters final judgment in accordance with the terms of the Settlement Agreement and this Order.

The Clerk of the Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated:   **May 1, 2024**

UNITED STATES MAGISTRATE JUDGE

17